UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:16-cv-24-MOC-DSC

| | |
|---|---|
| GLENDA WESTMORELEAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TWC ADMINISTRATION LLC, ) | **ORDER** |
| d/b/a TIME WARNER CABLE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Attorney Fees and Costs, based on fees incurred in defending Plaintiff's race discrimination claim brought under Title VII of the Civil Rights Act of 1964. (Doc. No. 100).

I.     **BACKGROUND**

Plaintiff Glenda Westmoreland filed this action against her former employer Defendant Time Warner Cable, alleging, among other things, that she was fired based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq., and under 42 U.S.C. § 1981, and based on her age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. This Court denied summary judgment as to both of Plaintiff's claims on September 5, 2017. (Doc. No. 33).

During trial and before the case went to the jury, this Court granted Defendant's motion for directed verdict as to Plaintiff's race discrimination claim. This first trial ended in a mistrial as to Plaintiff's remaining claims. At the second trial, the jury found Defendant liable on her age discrimination claim and wrongful discharge claim. In a published opinion, the Fourth Circuit Court of Appeals subsequently affirmed the jury's verdict. Westmoreland v. TWC Admin.

1

LLC., 924 F.3d 718 (4th Cir. 2019).

Defendant has now filed a motion for attorney fees as the prevailing party as to Plaintiff's race discrimination claim. In support of its motion, Defendant relies on the Declaration of Shalanna Pirtle, the Affidavit of Geraldine Sumter, and the transcript of Defendant's Motion for Directed Verdict on December 19, 2017. (Doc. Nos. 100–2, 100–3, 100–4). Plaintiff has filed a Response, opposing the motion for attorney fees, and Defendant has filed a Reply. (Doc. Nos. 108, 110). Furthermore, on November 4, 2019, this Court entered an order requiring Defendant to submit further documentation regarding attorney fees incurred by Defendant in defending Plaintiff's race discrimination claim—specifically, hours worked, so the Court can calculate a lodestar amount. (Doc. No. 113). On November 4, 2019, Defendant submitted to the Court the requested additional information. (Doc. No. 114). Thus, this matter is ripe for disposition.

## II. DISCUSSION

### A. Whether Defendant is Entitled to Attorney Fees As to Plaintiff's Race Discrimination Claim

Here, Defendant was the prevailing party as to Plaintiff's Title VII race discrimination claim. Title VII's attorney fees provision provides that the Court may award fees to "the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). In applying the Title VII attorney fees provision, the Supreme Court has held that fees may be awarded to a defendant who prevails on a plaintiff's Title VII claim if the Court finds the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978). Although this standard is intended to avoid chilling potentially meritorious claims, "[w]hen a court imposes fees on a plaintiff who has pressed a 'frivolous' claim, it chills

2

Case 5:16-cv-00024-MOC-DSC   Document 134   Filed 08/03/20   Page 2 of 14

nothing that is worth encouraging." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993) (reversing district court's denial of fees); see also EEOC v. Great Steaks, Inc., 667 F.3d 510, 517 (4th Cir. 2012) ("Although Congress sought to encourage the vigorous prosecution of meritorious Title VII actions by making it easier to bring them, it also wanted to deter frivolous lawsuits.").

Here, the Christiansburg standard is satisfied. Defendant wholly failed, at summary judgment and at trial, to identify any evidence supporting her allegation that she was terminated because of her race. Indeed, as the Court observed with respect to Plaintiff's summary judgment response, "plaintiff's substantive argument d[id] not mention race except in describing the 'nature of the matter before the court' and the 'question presented.'" (Doc. No. 33 at 4). For this reason, in ruling on Defendant's summary judgment motion, this Court expressly cautioned Plaintiff that "[w]hile the court will deny summary judgment at this point, the court will revisit the issue at the close of plaintiff's evidence. Plaintiff should carefully consider her continued maintenance of such claims." (Id.) (emphasis added). Despite this warning from the Court, Plaintiff continued to pursue her race discrimination, forcing Defendant to continue incurring fees in defending the race claim until the Court entered a directed verdict dismissing it at trial. In dismissing Plaintiff's race claim, the Court held:

> Having listened to all the testimony, reviewing -- and the admitted exhibits, the Court finds that no evidence has been submitted that intentional discrimination on the basis of race was the reason for the plaintiff's termination. The Court is very sensitive, particularly in today's climate, that race remains an issue in this country and the courts must watch it with great and careful deliberation. There are people out here who just don't get it. However, in this case it's not here. These—the claims on race under Title VII is—and—are hereby dismissed. All claims on race are hereby dismissed with prejudice.

(Doc. No. 100–4 at 10: Ex. C). Thus, even after the Court cautioned Plaintiff that she should carefully consider continued maintenance of her race claim and gave Plaintiff the benefit of

3

every doubt in reviewing the evidence presented at trial, the Court found that Plaintiff presented "no" evidence of intentional discrimination based on race. Here, it is clear to the Court that Plaintiff's pursuit of her race claim was, at the least, unreasonable and groundless (if not frivolous), and she continued to pursue it after the Court warned her about the evidentiary weakness of her claim. Accordingly, pursuant to Christiansburg, the Court finds that Defendant is entitled to attorney fees.

In opposing Defendant's motion, Plaintiff argues that the race discrimination claim was not frivolous, unreasonable, or groundless for two reasons: (1) because this Court denied Defendant's summary judgment motion as to the race discrimination claim; and (2) because Plaintiff stated in court she believed race was a motivating factor for her termination.[1] (Doc. No. 108 at 5). Plaintiff's contentions are without merit. First, surviving a summary judgment motion does not, as Plaintiff suggests, give a plaintiff the liberty to continue pursuit of a groundless claim and avoid having to pay attorney fees. Accord Hutchinson v. Staton, 994 F.2d 1076, 1081–82 (4th Cir. 1993) (reversing and remanding with directions to reinstate a fee award to the defendant, even though the plaintiffs had survived both a motion to dismiss and a summary judgment motion, and noting that the Court has given plaintiffs "ample notice that they were skating on thin ice" with regard to their conspiracy claim). Here, the Court gave Plaintiff the benefit of the doubt in denying Defendant's summary judgment motion, but the Court warned her that her evidence of race discrimination was weak and expressly warned against continuing to pursue that claim:

> As to plaintiff's Title VII and Section 1981 claims that her race was a motivating factor in her termination, the evidentiary record on summary judgment and her brief are not as supportive of those claims as they are of her age claims. Indeed, plaintiff's substantive argument does not mention race except in describing the

---

[1] Plaintiff does not challenge the reasonableness of the amount of attorney fees requested.

4

> "nature of the matter before the court" and the "question presented." (Doc. No.
> 27-1 at 1 & 3). However, the court cannot conclude that no genuine issues of
> material fact remain for trial. While the court will deny summary judgment at this
> point, the court will revisit the issue at the close of plaintiff's evidence. Plaintiff
> should carefully consider her continued maintenance of such claims.

(Doc. No. 33 at 4). Furthermore, in dismissing Plaintiff's race discrimination claim at the close of her evidence in the first trial, this Court held that Plaintiff had submitted "no evidence . . . that intentional discrimination on the basis of race was the reason for the plaintiff's termination." (Doc. No. 100–4 at 11). Thus, the fact that Plaintiff's race discrimination survived summary judgment does not render it "not frivolous, unreasonable, or groundless."

As to Plaintiff's second argument opposing attorney fees—that she "stated in court she believed race was a motivating factor for her termination in addition to being terminated for her age"—Plaintiff's self-serving speculation does not provide the necessary factual support for her race discrimination claim. See Trammell v. Baltimore Gas & Elec. Co., 279 F. Supp. 2d 646, 655 (D. Md. 2003) ("Although the burden of production shifts [under the McDonnell Douglas framework], the plaintiff retains the burden of persuasion throughout all stages, see Burns v. AAF–McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996), and the plaintiff must present admissible evidence that is more than self-serving opinions or speculation."); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action."). In sum, for the reasons stated herein, the Court finds that Defendant is entitled to attorney fees incurred in defending Plaintiff's race discrimination claim.

### B. Lodestar Analysis

Having found that Defendant is entitled to attorney fees as to Plaintiff's race

5

discrimination claim, the Court must now determine whether the claimed fees are reasonable. To determine the appropriate amount of attorney's fees, this Court is tasked with determining the lodestar amount. The lodestar amount is the number of hours reasonably expended on the litigation multiplied by a reasonable rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In considering reasonableness, the Fourth Circuit has adopted the twelve Johnson factors set forth by the Fifth Circuit. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978) (adopting factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974). The twelve factors are as follows: (1) time and labor expended; (2) the novelty and difficulty of the question raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the length and professional relationship between the attorney and client; and (12) attorney fees in similar cases. Id. The Court will discuss each relevant factor in turn.

Here, in support of the requested amount of attorney fees incurred in defending Plaintiff's race discrimination claim, Defendant presents the following evidence:

Shalanna L. Pirtle, a partner in the Charlotte, North Carolina office of Parker Poe Adams & Bernstein LLP ("Parker Poe"), has submitted an affidavit in support of Defendant's motion for attorney fees. (Doc. No. 100–2). Pirtle states in her affidavit that she was the attorney primarily in charge of representing Defendant in this matter. As part of her responsibilities she oversaw the work of all the attorneys working on the matter. She was the attorney primarily responsible

6

Case 5:16-cv-00024-MOC-DSC   Document 134   Filed 08/03/20   Page 6 of 14

for issuing bills to the clients and, as a part of that obligation, she reviewed all the time entries of Parker Poe attorneys and other non-lawyer employees to be sure the work and time billed was reasonable and appropriate.

Pirtle states in her affidavit that Parker Poe attorneys engaged the following actions in defending Defendant against Plaintiff's Title VII claim, including but not limited to the following: preparing Defendant's Answer to Plaintiff's Complaint and affirmative defenses to Plaintiff's Title VII claim; preparing for and taking Plaintiff's deposition to ask about her Title VII claim; preparing Defendant's summary judgment motion and supporting memorandum of law in an effort to obtain summary judgment as to Plaintiff's Title VII claim; preparing for and conducting a mock trial focus group with special emphasis on the Title VII claim; preparing Defendant's trial witnesses for direct and cross-examination questioning regarding Plaintiff's Title VII claim; preparing Defendant's trial briefs relating to Plaintiff's Title VII claim; preparing jury charges on Plaintiff's Title VII claim; preparing for and defending Defendant at the first trial of this matter in December 2017; and before the court's dismissal of the claim on Defendant's Motion for Directed Verdict, preparing closing arguments specific to the Title VII claim. Pirtle states that every effort was made to minimize the expenses and attorneys' fees and to ensure that the expenditures were reasonable, appropriate, and warranted.

Pirtle further states that the defense of Plaintiff's Title VII claim was performed primarily by a small number of individuals, and duplication of efforts was avoided. Pirtle asserts that, where appropriate, highly qualified and experienced paralegals and litigation support professionals assisted with rendering legal services to TWC to minimize the amount of higher-priced attorney time. The attorneys principally involved in the defense against Plaintiff's Title VII claim were Pirtle, Stacy K. Wood, and Sarah J. Douglas. The primary paralegal involved in

7

the defense against Plaintiff's Title VII claim was Vicki Burn.

Pirtle states that, although other attorneys and paralegals were involved in the defense of this matter, she has excluded their time from the fee request to account for any inefficiency. She further states that, in preparing her affidavit, she reviewed the time entries for the Parker Poe attorneys, paralegals, and litigation support professionals who billed time towards defending against Plaintiff's Title VII claim to be sure she thought it was reasonable for the work that was billed to Defendant.

Pirtle states that about 50% of the fees associated with the following activities, or $2,674.80 of the total fees billed, were specifically related to the defense of Plaintiff's Title VII claim: preparing Defendant's and reviewing Plaintiff's Proposed Issues list for trial and preparing Defendant's and reviewing Plaintiff's Proposed Verdict Form. Pirtle further states that about 30% of the fees associated with the following activities, or $11,077.83 of the total fees billed, were specifically related to the defense of Plaintiff's Title VII claim: preparing Defendant's Trial Brief; preparing Defendant's and reviewing Plaintiff's Proposed Jury Instructions; preparing for and conducting a mock trial; preparing Defendant's demonstrative exhibits; and preparing Defendant's closing argument (before the Court granted the Motion for Directed Verdict). Finally, based on a careful review of the fees in this matter, Pirtle conservatively estimates that 10% of the remainder of certain fees incurred from the inception of this matter through December 19, 2017, or $14,283.09, were related to the defense of Plaintiff's Title VII claim.

Finally, Pirtle asserts that Parker Poe provided Defendant with a courtesy 10% discount on all work performed, which reduced the fees and costs Defendant would have sought to recover from Plaintiff here. Defendant asserts that this discount further supports the

8

Case 5:16-cv-00024-MOC-DSC   Document 134   Filed 08/03/20   Page 8 of 14

reasonableness of the fees that Defendant seeks in its motion. Pirtle notes that, taking into account the courtesy discount, Parker Poe billed Defendant a total of almost $200,000 in fees for its defense through the Court's grant of Defendant's Motion for Directed Verdict. In addition to legal fees, Defendant incurred significant costs in defending against Plaintiff's Title VII claim. These costs include professional fees for a trial/jury consultant, filing fees, transcript fees, and the costs of necessary photocopies and postage. Pirtle states that, of this total, Defendant conservatively attributes only $28,710.05 to its defense of the race claim.

As for the hourly fees charged to Defendant, Pirtle asserts that she charged Defendant $290.00 per hour for her time in this case. Pirtle asserts that she graduated from the University of Georgia law school in 2007. She has been practicing law continuously since she graduated from law school. She has represented numerous clients in employment disputes of all kinds and have litigation and trial experience. She was recognized by the North Carolina Super Lawyers as a Rising Star In Employment Litigation Defense for the years 2014 through 2017. In 2017, she was named one of the 50 most influential women by the *Mecklenburg Times*. Pirtle asserts that her rate of $290.00 per hour is more than reasonable for an attorney of her experience and expertise in the Charlotte, North Carolina market.

Next, Pirtle asserts that she charged Defendant $450.00 per hour for Stacy K. Wood's time. Wood is a partner at Parker Poe in the Charlotte, North Carolina office. Wood graduated from the University of Pennsylvania law school, cum laude, in 1991. She has been practicing law continuously since graduating from law school. Wood has represented numerous clients in employment disputes of all kinds and has tried more than half a dozen cases to judge or jury. Wood has been recognized by The Best Lawyers in America for her work in, among other things, employment litigation. Pirtle asserts that Ms. Wood's rate of $450 per hour is reasonable

9

for an attorney of her experience in the Charlotte, North Carolina area.

Next, Pirtle asserts that she charged Defendant $285.00 per hour for Sarah J. Douglas's time. Sarah J. Douglas is a Parker Poe associate in the Charlotte, North Carolina office. Douglas worked on the underlying litigation and had initial drafting responsibility for the summary judgment motion and associated documents. Douglas graduated from the University of South Carolina law school, summa cum laude, in 2014. Douglas focuses her area of expertise in employment litigation and she has practiced law five years, all of which have been with the Charlotte office of Parker Poe. Pirtle asserts that Douglas's rate of $285.00 per hour is reasonable for an attorney of her experience in the Charlotte, North Carolina area.

Finally, Pirtle asserts that she charged Defendant $220.00 per hour for Vicki Burn's time. Vicki Burn is a Parker Poe paralegal in the Charlotte, North Carolina office. Burn was the primary paralegal working with Pirtle on the underlying litigation. Burn has worked as a paralegal for over 25 years. Pirtle asserts that Burn's rate of $220.00 per hour is reasonable for a paralegal of her experience in the Charlotte, North Carolina area.

In response to the Court's order dated October 25, 2019, in which the Court instructed Defendant to submit further materials that would assist the Court in calculating a lodestar amount, Defendant submitted an additional declaration by Pirtle, in which Pirtle has clarified the total number of hours work on the race discrimination claim by Pirtle, attorney Wood, attorney Douglas, and paralegal Burn, as follows: Pirtle, 55.13 hours (at $290 per hour); Wood, 22.89 hours (at $450 per hour); Douglas, 10.22 hours (at $285 per hour); and Burn, 12.04 hours (at $220 per hour). This amount totals $31,849.70, but Defendant states that "following the reduction of hours and discount applied to each timekeeper's fees, Defendant conservatively attributes only $28,710.05 to its defense of the race claim." (Doc. No. 114 at 2).

Given the materials submitted by defense counsel in support of the attorney fees, the Court next addresses the following factors in determining whether the requested amount is reasonable.

**a. Time and Labor Expended**

First, the Court must consider the time and labor expended. Here, Defendant was the prevailing party as to Plaintiff's race discrimination claim. This action lasted months and involved two trials. The first trial ended in a mistrial. During that first trial, this Court granted Defendant's directed verdict motion at the end of trial. Defense counsel submitted a declaration and billing records showing that the amount of fees requested is far less than the total fees and represents the hours spent in defending only the race discrimination claim. The Supreme Court has held that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436. A district court should determine the lodestar amount and then "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Robinson v. Equifax Info. Servs., Inc., 560 F.3d 235, 244 (4th Cir. 2009).

The Supreme Court and the Fourth Circuit have made clear that courts should reduce hours for unsuccessful and unrelated claims. To this end, the Supreme Court created the common core of facts doctrine, which states that a party who is successful on one claim and unsuccessful on the other can obtain attorney's fees for both claims if the claims arose from the same common core of facts. Hensley, 461 U.S. at 435-36. The Supreme Court based this doctrine on the idea that cases involving a common core of facts would prove difficult to separate tasks into different claims. Id. at 435.

Here, the Court finds that defense counsel has meticulously and thoroughly explained the

11

percentage of billed hours attributable to the defense of the race discrimination claim. The methods adopted by defense counsel to limit any unnecessary overlap and the proactive pruning of the billing in this case leads this Court to find that the hours and labor expended are reasonable.

### b. Novelty and Difficulty of the Question Raised

The legal theories and principles underlying Title VII cases are well known to federal courts and federal practitioners. Thus, this matter was not particularly complex. This factor is neutral in determining whether the fees are reasonable.

### c. Skill Required

The skill required to adequately handle this case also weighs in favor of the requested fees being reasonable. Defense counsel defended against the race discrimination claim with a high level of skill. This factor weighs in favor of finding that the requested amount of fees is reasonable.

### d. Opportunity Costs

The Court does not find that this factor weighs for or against a finding that the requested amount of fees is reasonable.

### e. Customary Fee for Like Work and Attorney's Fees in Similar Cases

In further support of the reasonableness of the fees, Defendant has also submitted an affidavit of Geraldine Sumter, explaining that, as an employment law attorney in Charlotte, North Carolina, she is personally familiar with the work and processional reputation of attorney Pirtle, and she is also familiar with the rates charged by employment lawyers and civil litigators in North Carolina for similar work with Pirtle's years of experience. (Doc. No. 100-3). Sumter states that the current prevailing rate for such work ranges between $250 per hour to $700 per

hour and that the rate for attorneys with Pirtle's skill and experience is at the middle- to upper-end of that range. Sumter asserts that she has reviewed the hourly rates charged by the attorneys and paralegal at Parker Poe and that the rates charged are reasonable and well within the standard market rates charged by attorneys of comparable experience for litigation of this type in this Court. This Court finds that this factor weighs in favor of a finding that the requested fee amount is reasonable.

**f. Amount in Controversy and Results Obtained**

The Court finds this factor weighs in favor of the requested fees being reasonable. After this Court expressly warned Plaintiff that the evidence was very weak as to her race discrimination claim, she continued to pursue this claim at trial and, as noted, this Court granted Defendant's motion for directed verdict as to this claim. See also Hensley, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").

**g. Other Factors**

Here, the Court does not note any other factors that affect the Court's determination of what amount to award in this case.

**h. Calculation**

The Court has carefully reviewed the submitted billing sheets, which included detailed time increments and descriptions of the billed hours in this case, and the Court finds that the amount requested by Defendant is reasonable.

**III. CONCLUSION**

After having review Defendant's supporting materials, the Court finds that $28,710.05, the amount sought by Defendant, is entirely reasonable. In determining this, the Court has

13

carefully considered the affidavits and declarations attached to Defendant's motion. Thus, the Court will grant Defendant's Motion for Attorney Fees (Doc. No. 100) and award $28,710.05 in attorney fees to Defendant.[2]

**IT IS SO ORDERED**.

Signed: August 3, 2020

Max O. Cogburn Jr
United States District Judge

---

[2] As the Court discussed at the hearing on front pay held on December 18, 2019, the Court considers this award of attorney fees to be an "interim" award, such that the parties may file additional motions based on further fees incurred in this matter.